UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
LAISH, LTD.,

                   Plaintiff,

           -against-

JAFORA-TABORI, LTD.,

                   Defendant.
-----------------------------------------------------X
TOWNES, U.S.D.J.

MEMORANDUM
& OPINION

02CV1322(SLT)(MDG)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★                ★

TIME A.M. _____ P.M. _____

    Plaintiff Laish, Ltd., brings this diversity action alleging breach of contract and breach of the covenant of good faith and fair dealing against Defendant Jafora-Tabori, Ltd. Defendant filed a counterclaim for unpaid goods and moved for summary judgment on both its counterclaim and Plaintiff's claims. Based upon all submissions of the parties, for the reasons stated below, and based on the oral argument held on January 28, 2005, Defendant's motion is granted, in part, and denied, in part.

I. *Statement of Facts*

    Plaintiff Laish, Ltd., ("Laish" or "Plaintiff") is a distributor of Israeli and kosher foods and products. Defendant Jafora-Tabori, Ltd. ("Jafora" or "Defendant") is a manufacturer of kosher beverages. In approximately August 1997, Arie Leib Steiner, founder, president and majority shareholder of Laish, met with Eli Davidai, then-CEO of Jafora, to discuss the possibility of Laish distributing Jafora products in the United States, specifically Jafora's

"Spring" nectars. (Def. Rule 56.1 ¶ 7.) The parties met again in January of 1998 and, following that meeting, Amnon Dayagi of Jafora prepared a letter summarizing the relationship that Jafora wanted to pursue with Laish. (Steiner Decl. Ex. 1.)[1] Dayagi is responsible for purchasing, personnel, import and export. (Stener Decl. Ex. 31 at 6-7 (Dep. Tr. of Dayagi.)) The letter intended to "summarize the main points that were raised by us and will form a basis for action." It included, *inter alia*, the following points:

- Jafora-Tabori...wishes to market Spring nectar, and Tapuzina in 330ml cans, to Laish in the USA.
- [Jafora-Tabori] undertakes not to sell to any other person in the USA the above product line, for a period of 3 years.
- In the event that the buyer (Laish) will not fulfill the above targets, the seller will have the exclusive right to decide whether to sell to a third party, or continue the connection with Laish, with the condition that the third party not sell to Laish customers. (*Id.*)

Plaintiff alleges that these statements created an exclusive distribution agreement. (Pla. Rule 56.1 ¶ 9.) Defendant does not dispute the significance of this language, except insofar it disputes the entire agreement's validity.

*Bottles vs. Cans*

The agreement specifically mentions 330 ml cans as the product to be distributed by Laish. (Steiner Decl. Ex. 1.) At the time of the agreement, Jafora sold Spring in packaging other than cans, Def. Rule 56.1 ¶ 5, but the parties dispute whether Jafora sold cans to distributors in

---

[1]Although the parties dispute whether this letter constitutes a binding agreement, Jafora has decided to treat it as such for the purpose of resolving this motion. (Def. Mem. of Law at 2, n.1.) Therefore, I will refer to the letter as the parties' agreement.

the United States prior to the execution of the agreement. (Def. Rule 56.1 ¶ 4, Pla. Rule 56.1 ¶ 4.)

In the summer of 1998, Plaintiff discovered that Defendant was exporting 400 ml bottles of Spring to the United States and wrote to Defendant, saying, "if an identical product could be sold at the same time as Laish was selling 330ml cans, what utility would there be to the exclusivity?" (Steiner Decl. ¶ 8.) Plaintiff lodged several complaints with Defendant, claiming that "the label [on the bottles] is exact [*sic*] like the label on the cans, the same product, same family, it stands with the cans on the same shelf[;] it is the same cold product like you explained to me. It clashes with the cans." (Steiner Decl. Ex. 2 ¶ 9; *see also* Steiner Dec. Ex. 3.) Despite Plaintiff's numerous complaints, Jafora declined its requests to distribute 400 ml bottles. (Def. Rule 56.1 ¶ 23.)

Plaintiff also became aware of sales of Spring cans in the United States and complained to Defendant. (Steiner Decl. Exs. 2, 6, 11, 12, 13.) In particular, Plaintiff complained that a distributor in Florida obtained shipments of Spring and made it difficult for Plaintiff to make sales in that region. (Steiner Decl. Exs. 11, 12.) Plaintiff claims that Defendant allowed Danor-Danex, an Israeli distributor, to continue to place orders for 330 ml cans of Spring and sell them to distributors throughout Florida and the Northeast while claiming that the goods were in transit to South America. (Steiner Decl. Exs. 18, 19, 21, 23, 24 (purchase orders for sales by Jafora to Danor-Danex; Danor-Danex to Woodridge Meats d/b/a Kessler Brothers, an American company employing Yossie Shlang as its distributor; and Kessler Brothers to various Florida-based distributors).)

*Relationship Between Alleged Conspirators*

Jafora and Danor-Danex have a history of buying goods from each other. Jafora sells products to Danor-Danex that are intended for export. (Steiner Decl. Ex. 31 at 7 (Dep. Tr. of Dayagi).) Jafora pays commission to Danor-Danex for these sales. (*Id.* Ex. 31 at 10.) Jafora also purchases products, specifically dyes, that are imported by Danor-Danex. (*Id.* Ex. 31 at 8.) While the parties have written agreements evidencing orders placed for items purchased from Danor-Danex, it is noteworthy that there exists no written agreement concerning commissions paid to Danor-Danex for exported Jafora goods. (*Id.* Ex 31 at 9-10.) Jafora claims to have an "understanding" with Danor-Danex regarding commissions of Jafora exports, *Id.* Ex. 31 at 10, and neither knowledge of nor interest in the identity of the purchasers of goods exported by Danor-Danex. (*Id.* Ex 31 at 14.)

Plaintiff alleges that Jafora, Danor-Danex, Shlang and Victor Carmelli, a Florida distributor, acted in concert to circumvent its distribution agreement based on the following alleged conduct:

- Jafora sold a shipment of 300 ml Spring cans to Shlang after the January 1998 agreement with Laish and Shlang allegedly sold them for a "closeout price" causing destabilization of the market for Spring. (Steiner Decl. Ex. 2; *see also* Ex. 7 (letter from Dayagi acknowledging sale and explaining that Shlang placed the order prior to execution of the agreement).)
- Dayagi claims to "have no connection" to anything beyond the initial sales of Spring to Danor-Danex, but met with Shlang in an attempt to help Danor-Danex. (Steiner Decl. Ex. 31 (Dep. Tr. of Dayagi) at 20.)
- Shlang directed letters to Dayagi regarding violations of its exclusivity for the 1.5L Spring bottles, rather than go through Danor-Danex. (Steiner Decl. Ex. 31 (Dep. Tr. of Dayagi.) at 94.)
- Jafora failed to investigate the alleged sales in Florida (beyond asking Danor-Danex for assurances) despite Jafora's more in-depth investigation of a 1998 complaint by Shlang

4

- that a competitor was selling 1.5L bottles of Spring in violation of Shlang's exclusivity. (Steiner Decl. ¶ 40, Exs. 25, 31 at 62-67 (letter and testimony of Shlang regarding same).)
- Designation of Jafora as the "shipper" on International Bills of Lading ((Steiner Decl. Ex. 31 (Dep. Tr. of Dayagi) at 29-30.)
- Shlang's sale of 330 ml Spring bottles to Carmelli for 2% profit as a "birthday present" to Carmelli. (Steiner Decl. Ex. 32 (Dep. Tr. of Shalng) at 125.)
- Jafora's decision to "allow an agent who operates in [Florida] to sell drink cans" in 2001, after years of complaints by Laish that someone was importing Spring to Florida. (Steiner Decl. Ex. 16.)
- Jafora's payment of customs agents for exports (Steiner Decl. Ex. 31 (Dep. Tr. Of Dayagi) at 31.)
- Bills of Lading which do not comport with what they would be were they intended for South America, as Defendant claims it was told. (Steiner Decl. Exs. 33, 34)
- Deposition testimony of customers who claimed to have been told by Jafora that Shlang was the distributor and told by Shlang to order through him and to refrain from attempting to sell the cans of Spring anywhere near Laish's main territories of Brooklyn and Queens. (Steiner Decl. Exs. 36, 37.)
- Jafora's failure to provide Plaintiff with product labels containing U.S.-compatible bar coding, despite fulfilling Shlang's request for same. (Steiner Decl. Exs. 2, 8, 13, 14; *see also* Dep. Tr. of Shlang, Ex. 32 at 79-80.)

In sum, Plaintiff alleges that Jafora sold to Danor-Danex, who sold to Woodridge/Shlang or Carmelli,[2] both of whom allegedly made sales within the United States. Jafora then informed Laish that it would appoint a different distributor in Florida due to Laish's poor sales. Shlang denies selling in the U.S., other than those sales allegedly intended for South America, and Carmelli admits selling in the U.S. but denies apprising anyone of these sales.

*Sales to Laish*

Jafora continued to send, and Laish continued to receive, shipments of Spring during the pendency of this dispute, totaling 23,400 trays of the beverage and $194,735 in invoices. (Def.

---

[2]Carmelli admits to making sales in the United States and lying to Danor-Danex when asked whether he was doing so. (Boxer Decl. Ex. G at 29)

Rule 56.1 ¶ 39.) There remains eight uncontested invoices that Laish has refused to pay, believing the amounts owed to Jafora for those shipments would be offset by the damages to which Laish would be entitled after disposition of its breach of contract and breach of the implied covenant of good faith and fair dealing claims. (Def. Rule 56.1 ¶¶ 41-45.) Defendant moved for summary judgment of its counterclaim for the amount of the uncontested invoices, as well as summary judgment of Plaintiff's breach of contract and good faith and fair dealing claims.

## II. *Discussion*

Summary judgment is appropriate where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). To be "genuine," an issue of fact must be supported by evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Holtz*, 258 F.3d at 62. Because the moving party bears the burden of showing that there are no genuine issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), "a court must resolve all ambiguities and draw all reasonable inferences against [it]." *Alston v. New York City Transit Authority*, 2003 U.S. Dist. LEXIS 21741, at *4 (S.D.N.Y. 2003) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

### A. *Jafora's Counterclaim*

Laish does not dispute having ordered, received, accepted and sold the 23,400 trays. (Pla. 56.1 ¶ 40.) However, the parties disagree on what sections of the New York's Uniform

Commercial Code ("UCC") apply to this dispute. To Jafora, this is a straightforward analysis: "The obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract." N.Y. U.C.C.§ 2-301. Laish argues that UCC §§ 2-714 and 2-717 apply to preclude summary judgment. Laish is incorrect with respect to § 2-714, but correct with respect to § 2-717.

Section 2-714 reads:

"(1) Where the buyer has accepted goods and given notification...he may recover as damages for any *non-conformity* of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable."

N.Y. U.C.C. § 2-714 (emphasis added). This section cannot apply because there is no non-conforming tender at issue. "Laish had no problem with the delivered product." (Pla. Mem. of Law at 5.) As a result, the cases cited by Laish in which § 2-714 is employed are inapposite, as they all involve the offsetting of losses sustained by purchasers because of a defective or late tender on the part of sellers. *See Cliffstar Corp. v. Elmar Indus.*, 254 A.D.2d 723, 724 (N.Y. App. Div. 1998) (citing § 2-714 as one of three UCC remedies following delivery of a nonconforming product); (*Flick Lumber Co. v. Breton Indus.*, 233 A.D.2d 779, 780-781 (N.Y. App. Div. 1996) (denying summary judgment when plaintiff raised issue regarding non-conformity of goods); *Belfont Sales Corp. v. Gruen Indus.*, 112 A.D.2d 96, 98-99 (N.Y. App. Div. 1985) (predicating the denial of summary judgment on an issue of fact stemming from purchaser's "large expenses incurred in handling defective [products]").

Unlike § 2-714, § 2-717 permits the buyer to deduct from the purchase price damages incurred as a result of *any* breach by the seller and "does not limit the relief to cases of breach of

7

warranty as did the prior uniform statutory provisions." *See* N.Y. U.C.C. § 2-717. An instructive case not cited by either party is *Created Gemstones, Inc. v. Union Carbide Corp.*, 47 N.Y.2d 250 (1979). In *Created Gemstones*, plaintiff was appointed distributor of defendant's synthetic gems. *Id.* at 253. Two years into the relationship, defendant imposed a $200,000 limit on plaintiff's line of credit, but continued to ship orders, allowing plaintiff to accrue $224,681.73 in orders until refusing to continue shipments and requiring that all orders be pre-paid. *Id.* The Special Term granted summary judgment on the grounds that plaintiff's liability for the goods received was established. *Id.* at 253-254. The Court of Appeals reversed, holding that summary judgment cannot be granted where there are unresolved factual issues of whether the seller breached the underlying agreement:

> If, after trial, it is determined that defendant did in fact breach, then plaintiff's liability on the counterclaims would be extinguished to the extent that it was damaged by the breach. By the same token, should defendant be found not to have breached, it would be entitled to judgment on the counterclaims. Whatever the ultimate result, proper disposition of the counterclaims must await resolution of this factual question.

*Id.* at 256-257.

Section 2-717 also requires that the purchaser give notice to the buyer of its intent to withhold amounts owed, which may be provided in the form of a complaint filed by the purchaser. *Panda Capital Corp. v. Kopo Int'l, Inc.*, 242 A.D.2d 690, 692 (N.Y. App. Div. 1997). At a minimum, Plaintiff has raised an issue of material fact warranting denial of summary judgment of Defendant's counterclaim.

B.  *Breach of Contract*[3]

To sustain a claim for breach of contract, Laish must show "(1) the formation of the contract, (2) its performance of any dependent conditions or conditions precedent, (3) the other party's failure to perform its obligations under the agreement, and (4) resulting damage." *New Jersey Steel Corp. v. Bank of New York*, 223 B.R. 406, 414 (S.D.N.Y. 1998). Though Jafora has assumed, for the purpose of this motion, that the parties have entered into a contract, they argue that the contract gives Laish the exclusive right to distribute Jafora's cans of Spring, and not their bottles. Therefore, they argue, they have breached no contract in selling bottles of Spring in the United States. Laish does not dispute that the agreement uses only the word "cans" and not "bottles," but argues that "the intent of the parties was to include 330 ml cans and comparably-sized packaging had they existed; otherwise, the exclusivity would have been meaningless." (Pla. Rule 56.1 ¶8.) In addition to the dispute surrounding Defendant's bottled Spring, Plaintiff also alleges that Defendant breached the agreement by selling cans of Spring to distributors in the

---

[3] Plaintiff argues that, because Defendant argued in its motion to dismiss that it is not responsible when other distributors in the U.S. obtain cans of Spring, the "law of the case" should apply to preclude that argument at the summary judgment stage. However, the law of the case does not apply here, as the court decided the Rule 12 motion based on other issues and the "law of the case" doctrine "may be properly invoked only if the parties had a full and fair opportunity to litigate the initial determination." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 219 (2d Cir. 2002). Judge Glasser appears to have based his ruling on the fact that neither party's argument was clear and convincing, and therefore Plaintiff's complaint could not be dismissed, not that the Defendant's arguments were invalid. (*See* Boxer Decl. In Further Support of Defendant's Motion to Dismiss Ex. F. at 8 (Hr'g Tr. before Judge Glasser) ("I do not want to go through all the correspondence. There are a lot of places in the correspondence which gives rise to differences of opinion."); *see also id.* at 2-3 (court's discussion of parties' dispute over the existence of the contract); at 4 (court's discussion of whether agreement for cans could include bottles); at 5 (court's discussion of whether agreement would need to be signed to be valid); at 7 (court's discussion of whether alleged agreement could be construed as exclusive).)

U.S. and by increasing prices in contravention of the agreement. Each allegation must be analyzed separately.

   1.   *Spring Bottles*

In essence, Plaintiff asks the court to consider the term "cans" as used in the agreement to include bottles. "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (N.Y. 1990). Circumstances extrinsic to the agreement should not be considered when the intention of the parties can be gleaned from the writing. However, a contract provision will not be read to render a disputed clause meaningless: "[T]he well-settled rules of construction require the giving of due consideration to all parts of a contract...as to give effect and meaning to every word and expression." *Benvenuto v. Rodriguez*, 279 A.D. 162 (N.Y. App. Div. 1951); *see also Uribe v. Merchants Bank of New York*, 91 N.Y.2d 336 (N.Y. 1998) ("Reasonable expectation and purpose of the ordinary business person when making an ordinary business contract serve as the guideposts to determine intent...Thus, the tests to be applied are...common speech...and the reasonable expectation and purpose of the ordinary business person.").

Jafora undertook "not to sell to any other person in the USA the above product ine." (Steiner Decl. Ex. 1.) Plaintiff argues that "the above product line" must include the 400 ml bottle of Spring, otherwise Laish's status as the exclusive distributor of 330 ml cans of Spring would be meaningless. Although Plaintiff is correct that a contract provision should not be read to render a disputed clause meaningless, there must first be an ambiguous term at issue. "The conduct of the parties may fix a meaning to words of doubtful import. It may not change the

10

terms of a contract." *Nau v. Vulcan Rail & Constr. Co.*, 286 N.Y. 188 (N.Y. 1941). There is no ambiguous term in the agreement and therefore, the court "must give the words and phrases employed their plain meaning." *Curtiss-Wright Corp. v. Kennecott Corp.*, 504 F. Supp. 1044, 1050 (S.D.N.Y. 1980). "Mere disappointment in plaintiff's expectations does not permit the Court to make a new contract for the parties or to insert protective conditions which the parties failed to provide for themselves." *Id.* (citation omitted). Plaintiff contracted to be the exclusive distributor of cans of Spring and, in selling bottles of Spring to other distributors in the United States, Defendant has not breached its agreement with Plaintiff, regardless of the practical effect of the 400 ml bottles being similar to the 330 ml cans. "If the parties to a contract adopt a provision which contravenes no principle of public policy and is not ambiguous, the courts have no right to relieve one of them from disadvantageous terms by a process of interpretation." *Seifert, Hirshorn and Packman, Inc. v. Ins. Co. of N. Amer.*, 36 A.D.2d 506, 508 (N.Y. App. Div. 1971). Therefore, Plaintiff's claim that Defendant breached the contract by selling 400 ml bottles of Spring in the United States is not supported by the law and cannot prevail.

2.  *Sale of Spring Cans in the United States*

Plaintiff alleges that Defendant continued to sell cans of Spring in the U.S. through Danor-Danex, Woodridge, Schlang and Carmelli. Defendant argues that, in the absence of a contract provision requiring the seller to police its customers for the purpose of finding alleged violators of Plaintiff's exclusivity, there can be no liability when Defendant sells to an Israeli company who then sells to a U.S. company. *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 73 (2d Cir. 1979) (Mansfield, J. concurring) ("Nothing in the contract...obligates

[defendant] to police its customers in other areas"). Not only is this concurring opinion not binding on this court, but it also implies that the result might be different if the seller "controlled, instigated, encouraged or participated in such transshipments," things that Jafora is accused of doing in this action, making this precedent less persuasive. *See id.*

Defendant also cites *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641 (3d Cir. 1958). Here, plaintiff, an exclusive distributor of "Hollywood" bread, entered into an agreement to sell the bread to an entity that ultimately re-sold in an area covered by an exclusive distribution agreement of plaintiff's competitor. *Id.* at 644-645. In retaliation, the competitor, Freihofer, entered into an agreement with its subsidiary to sell the bread in the area covered by plaintiff's exclusive distribution agreement. *Id.* The court found that

> [a]lthough this contract was entered into by [plaintiff] with the knowledge that a substantial quantity of its bread would be re-shipped...to retail outlets in the [defendant's] territory there is no substantial evidence that this sales agreement was a subterfuge entered into merely to enable [plaintiff] to invade [defendant's] area. Nor is there any evidence that [plaintiff] did or could exercise any control over [the third party with whom it entered into the agreement]."

*Id.* at 644. Looking at the agreement, the court found that "the writing contains no restrictions against bona fide sales to an independent vendor." *Id.* at 656. Plaintiff's sale to an independent distributor was considered bona fide, while defendant's sale to its subsidiary was not. *Id.*[4] The evidence in the record reveals a question of fact as to whether Jafora's sales to Danor-Danex

---

[4] The remaining cases cited by Defendant are inapposite, as they deal with stream of commerce doctrines specific to trademark and patent law, respectively. *See Liz Claiborne Inc. v. Mademoiselle Knitwear, Inc.*, 979 F. Supp. 224, 230 (S.D.N.Y. 1997); *Munters Corp. v. Burgess Indus. Inc.*, 450 F. Supp. 1195, 1203 (S.D.N.Y. 1977).

12

were bona fide, as well as the extent to which Jafora did or could exercise control over Danor-Danex, Woodridge, Shlang or Carmelli.

The majority of cases cited by the Plaintiff are also easily distinguishable. *See Lanvin Inc. v. Colonia, Inc.*, 739 F. Supp. 182, 185 (S.D.N.Y. 1990) (involving exclusive distribution agreement in which defendant expressly agreed to ensure that no future distributors take action inconsistent with plaintiff's distribution rights, an agreement that Jafora did not make with Laish); *New York Pepsi-Cola Dist. Assoc. v. Pepsico, Inc.*, 240 A.D.2d 315 (N.Y. App. Div. 1997) (implying that, had the parties entered into a contract, the breach of fiduciary duty claim for transshipment of exclusively licensed goods by defendant may not have been dismissed, but comes short of holding that a contract alone would have been enough); *Heil Co. v. Swiftainer Indus. Corp.*, 52 A.D.2d 549 (N.Y. App. Div. 1976) (refusing to grant summary judgment where plaintiff introduced Sherman Act affirmative defense to defendant's claim that plaintiff permitted others to infringe on defendant's exclusivity, and not directly addressing the dissent's argument that the manufacturer does not control goods after resale). Plaintiff cites one case from 1908 in which a pretend sale and transfer was alleged to have taken place between the defendant and a third party for the purpose of avoiding an exclusivity contract with plaintiff. *See generally Motley, Green & Co. v. Detroit Steel & Spring Co.*, 161 F. 389 (S.D.N.Y. 1908). Although the case deals primarily with the liability of a third party in inducing breach of contract, the court finds both the defendant and the third party would be liable: "Intentionally to do that which is calculated, in the ordinary course of events, to damage, and which does in fact damage another in that other person's property or trade, is actionable if done without just cause or excuse." *Id.* at 397.

Taking all of the factors into account in the present case, Laish has presented sufficient evidence to preclude the award of summary judgment of its breach of contract claim with respect to cans of Spring that were sold in the United States to distributors other than Laish. It has presented evidence that Danor-Danex may have functioned as a middleman between Jafora and Shlang, that Jafora did not adequately investigate Laish's complaints, that Jafora sent a shipment of Spring to Shlang following the execution of the agreement and that Jafora told at least one distributor that Shlang obtained exclusivity rights in the United States rather than Laish. A reasonable juror could find Jafora culpable for the shipments that resulted in sales competing with Laish, and thus, that claim cannot be dismissed at this stage.

### 3. *Breach of Contract with respect to Pricing*

Although not among the claims originally sought to be dismissed by Defendant, Plaintiff's memorandum in opposition to Defendant's motion drew attention to Defendant's failure to respond to its breach of contract claim with respect to pricing under the agreement. Defendant then addressed Plaintiff's argument in its reply. Because neither party has cited any law in support of their arguments, and genuine issues of material fact remain, this claim cannot be dismissed.

The language of the agreement is as follows: "The price will change each year after a negotiation, which will take place 3 months prior to the years' end. In case the two sides will [*sic*] not reach agreement, the change will be equal to the US inflation, except for unusual cases, of a change in the price of raw materials." (Steiner Decl. Ex. 1.) Though the Defendant claims

14

that the 5% increase was necessitated by the increased price of raw materials, Boxer Decl. Ex. F at 53-54, Plaintiff claims it was in retaliation for its complaints.

This claim cannot be dismissed, as Defendant has not shown that the price increase was in fact correlated to the increase in raw materials.

C.  *Reformation*

Plaintiff also raised the issue of its claim for reformation of the contract to include 400 ml bottles of Spring. Reformation has been "limited both substantively and procedurally to avoid the danger that a party, having agreed to a written contract that turns out to be disadvantageous, will falsely claim the existence of a different contract." *Travelers Indem. Co. of Ill. v. CDL Hostels USA*, 322 F. Supp. 2d 482, 495-496 (S.D.N.Y. 2004); *see also, supra,* at section (II)(B)(1) (discussion of court's inability to retroactively "fix" the meaning of a contract). Additionally, "absent fraud, unilateral mistake is not a ground for reformation." *Schmidt v. Magnetic Head Corp.*, 468 N.Y.S.2d 649, 655 (N.Y. App. Div. 1983) (citations omitted).

Plaintiff alleges unilateral mistake but its amended complaint fails to state with particularity, as is required by the Federal Rules of Civil Procedure, those incidents or occurrences that establish the alleged fraud. *See* Fed. R. Civ. P. 9(b); Boxer Decl. Ex. A, Am. Complaint ¶¶ 21-28. "[W]hen a complaint charges fraud, it must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir.1996). Plaintiff's complaint fails to meet these requirements.

15

Plaintiff has cited only one case – one in which reformation was denied – and has failed to show any of the elements of fraud under New York law. "Procedurally, there is a heavy presumption that a deliberately prepared and executed written instrument manifests the true intention of the parties, and a correspondingly high order of evidence is required to overcome that presumption." *Travelers*, 322 F. Supp. 2d at 496. Plaintiff has not met that burden. It has not stated a duty on the part of Jafora to disclose any plans it may have had to begin distribution of the 400 ml bottle of Spring, has not said how it was "led to believe by defendant that defendant was marketing 'Spring' in 330 ml cans only and did not, and had no intention to, market 'Spring' in bottles of comparable size," Boxer Decl. Ex. A, Am. Complaint ¶ 23, and states that "[i]t is not unreasonable to conclude that Jafora made the decision to market the bottle or was doing so when the parties entered into the January 7, 1998 agreement." (Pla. Mem. of Law at 25.) A conclusion that is simply "not unreasonable" is insufficient language to defeat a summary judgment motion when a "high order of evidence" is required. Additionally, "[w]hen dealing with a claim of fraud based on material omissions, it is settled that a duty to disclose arises only when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them...When parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *Travelers*, 322 F. Supp. 2d at 499. Therefore, Plaintiff's claim of reformation must be dismissed.

D.  *Implied Covenant of Good Faith and Fair Dealing*

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Fasolino Foods, Inc. v. Banca Nazionale Del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992). It is a well-settled principle that claims for beach of the implied covenant of good faith and fair dealing are not distinct from the underlying breach of contract claim and therefore must be dismissed. *Computech Int'l Inc. v. Compaq Computer Corp.*, 2002 WL 31398933, *4 (S.D.N.Y. Oct. 24, 2002). Plaintiff's opposition papers did not attempt to (and cannot) dispute this law. This claim must be dismissed as redundant. *See Village on Canon v. Bankers Trust Co.*, 920 F. Supp. 520, 534 (S.D.N.Y. 1996) (breach of implied covenant does not provide independent basis for recovery).

III. *Conclusion*

Because the parties' agreement is unambiguous in its specificity of Spring cans as the product that Plaintiff was entitled to exclusively distribute, Defendant is entitled to dismissal of Plaintiff's claim of breach of contract claim with respect to its sales of bottles of Spring in the United States. For a similar reason, Defendant is entitled to summary judgment of Plaintiff's reformation claim, in that the court is not permitted read the term "bottles" into the contract. Defendant is also entitled to summary judgment of Plaintiff's claim of breach of the covenant of good faith and fair dealing, which, in this case, is indistinct from its claim for breach of contract. However, Defendant is not entitled to summary judgment of Plaintiff's breach of contract claim with respect to its sales of cans to Danor-Danex, as questions of fact remain whether Defendant

had control or influence over Danor-Danex. Nor is Defendant entitled to summary judgment of Plaintiff's breach of contract claim with respect to pricing because the record lacks evidence regarding the price of raw materials, which bears directly on the reasonableness of Defendant's pricing. Finally, Defendant is not entitled to summary judgment of its counterclaim for amounts unpaid under the agreement, as these amounts may be offset by any damages to which Plaintiff is entitled for the breach of contract claims not dismissed.

**SO ORDERED.**

SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE

Dated: January 12, 2006
Brooklyn, NY